# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### 5:15-cv-

| | | |
|---|---|---|
| AVX CORPORATION, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| CORNING GLASS WORKS; CORNING | ) | **COMPLAINT** |
| INCORPORATED; COMPONENTS, | ) | |
| INCORPORATED; CORNING | ) | |
| INTERNATIONAL CORPORATION; | ) | |
| CORNING FRANCE, S.A. AND | ) | |
| CORNING LIMITED, | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

The plaintiff, AVX Corporation ("AVX" or "Plaintiff"), by and through its undersigned counsel, complaining of the defendants, Corning Glass Works, Corning Incorporated, Components, Incorporated, Corning International Corporation, Corning France, S.A. and Corning Limited (collectively and individually, "Corning" or "Defendants"), respectfully alleges and shows unto the Court as follows:

## NATURE OF THIS ACTION

AVX brings this action under the Federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, and state law to recover from Corning certain costs and damages associated with releases and threatened releases of hazardous substances and other constituents at, on and from property formerly owned by Corning, an approximately thirty-three (33) acre tract of land located at 3900 Electronics Drive in Raleigh, Wake County, North Carolina ("the Property"). AVX also seeks a declaration regarding the parties' rights and obligations in this matter. Additionally, AVX seeks an injunction requiring Corning to assess and remediate adequately the Property in a timely fashion.

## THE PARTIES

1.        AVX is a corporation organized and existing under the laws of Delaware, with its principal place of business in South Carolina.

2.        On information and belief, defendant Corning Glass Works is a corporation organized and existing under the laws of New York, with its principal place of business in New York, and doing business in North Carolina.

3.        On information and belief, defendant Corning Incorporated is a corporation organized and existing under the laws of New York, with its principal place of business in New York, and doing business in North Carolina.

4.        On information and belief, defendant Components, Incorporated is a subsidiary of Corning Glass Works and a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, and doing business in North Carolina.

5.        On information and belief, defendant Corning International Corporation is a subsidiary of Corning Glass Works and a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, and doing business in North Carolina.

6.        On information and belief, defendant Corning France, S.A. is a subsidiary of Corning Glass Works and a corporation organized and existing under the laws of France, with its principal place of business in France, and doing business in North Carolina, by virtue of, among possibly other things, its execution of an Agreement of Purchase and Sale in November of 1987 that conveyed the Property to AVX ("Purchase Agreement") that imposes assessment and remediation responsibilities with respect to the Property on this defendant and all the other defendants today.

2

7.     On information and belief, defendant Corning Limited is a subsidiary of Corning Glass Works and a corporation organized and existing under the laws of the United Kingdom of Great Britain, with its principal place of business in England, and doing business in North Carolina, by virtue of, among possibly other things, its execution of the Purchase Agreement that imposes assessment and remediation responsibilities with respect to the Property on this defendant and all the other defendants today.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 42 U.S.C. § 9607(a) and 42 U.S.C. § 9613(b).  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Corning because Corning:  (a) formerly owned the Property, which is located in Wake County, North Carolina; (b) is registered to do business in North Carolina; (c) has conducted and is conducting business in North Carolina; (d) has entered into an agreement requiring environmental assessment and remediation at the Property today; and (e) claims to be conducting some environmental activity at the Property in connection with that agreement.

10.     This Court has authority to issue a declaratory judgment concerning the rights and obligations of the parties pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 9613(g)(2) and N.C. Gen. Stat. § 1-245 because there is a genuine controversy between the parties.

11.     Venue is proper in the Eastern District of North Carolina, Western Division, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) because:  (a) the Property is located within this District and Division; (b) the releases or threatened releases of hazardous substances and other constituents giving rise to these claims occurred within this District and Division; and (c) Corning entered into an agreement requiring environmental cleanup at the Property today and

3

claims to be conducting some environmental activity at the Property in connection with that agreement.

## OPERATIVE FACTS

12.     On information and belief, Corning operated a manufacturing facility at the Property for almost twenty-five (25) years, from 1963 to 1987.

13.     AVX purchased the Property from Corning in or about November of 1987.  The terms of the purchase were governed by the Agreement of Purchase and Sale ("Purchase Agreement").  An Amended Purchase Agreement also was executed by the parties in November of 1987.

14.     Under the Purchase Agreement, Corning retained "all liabilities for violations of environmental laws and health and safety laws applicable to such operation, which violations existed, or are based upon conditions that existed, prior to the Closing Date" (hereinafter "Retained Liabilities").  *See* Purchase Agreement ¶ 3.3(d).

15.     Corning also retained "all other liabilities and obligations of or with respect to the Corning Electronics Business and the Corning Assets other than the AVX Assumed Liabilities." *See* Purchase Agreement ¶ 3.3(g).  Environmental liability is not an AVX Assumed Liability under the Purchase Agreement.  *See* Purchase Agreement ¶ 3.1.

16.     Corning also agreed to indemnify and hold AVX, its directors, officers, employees and affiliates harmless from and against "any and all claims, liabilities, losses, damages, costs and expenses, including reasonable counsel fees" arising out of or relating to any Retained Liabilities.  *See* Purchase Agreement ¶ 12.1(b).

17.     AVX and Corning also executed a Letter Agreement on November 10, 1987.  By way of the Letter Agreement, "Corning acknowledge[d] that AVX's consultants ... indicated the

possibility that certain sites located on the [Property] … may be contaminated by hazardous substances…." *See* Letter Agreement p. 1.

18. On information and belief, impacts identified by AVX prior to the closing date included impacts in the vicinity of an injection well that was operated by Corning on the Property (the "Dry Well").

19. The Letter Agreement was "intended to confirm <u>and amplify</u>" AVX's rights and Corning's obligations regarding environmental impacts at the Property. *See* Letter Agreement p. 1 (emphasis added).

20. The Letter Agreement provides that:

> "All liabilities and obligations arising out of or relating to any Environmental Situation are Retained Liabilities within the meaning of [Purchase Agreement ¶ 3.3(d)], and therefore AVX, its directors, officers, employees, affiliates, successors and assigns (the 'Indemnified Parties') shall be entitled to indemnification under [Purchase Agreement ¶ 12.1(b)]…."

*See* Letter Agreement ¶ 1.

21. The Letter Agreement also clarified that Corning agreed to "effect all remedial measures required by law or regulation. . . ." *See* Letter Agreement ¶ 2.

22. On information and belief, on July 17, 1991, the North Carolina Department of Health, Environment and Natural Resources (now Department of Environmental Quality ("DEQ")) issued a Notice of Violation ("NOV") to Corning for contravening the State's groundwater quality standards by improperly discharging contaminants into the subsurface via an illegal "dry well."

23. On information and belief, two months later (and four years after it sold the Property to AVX), Corning constructed and began operation of a pump and treat groundwater remediation system at the Property, on or about September 25, 1991 (the "Remedial System").

24.     AVX and Corning executed a Lease Agreement on or about March 15, 1993, by which AVX leased a portion of the Property to Corning to allow Corning to operate and maintain the Remedial System (the "Leased Area").  The Leased Area includes approximately eleven (11) acres of the approximately thirty-three (33)-acre Property.

25.     On information and belief, Law Environmental, Inc. conducted groundwater monitoring on the Property on or around January 1989 and submitted results of this monitoring to DEQ in a "Report for Hydrogeological Characterization and Groundwater Analysis" dated March 2, 1989 reporting the presence of trichloroethylene ("TCE"), tetrachloroethane and toluene, among other volatile organic compounds ("VOCs"), in initial groundwater samples taken downgradient from the Dry Well.

26.     Over time, consultants working on behalf of Corning have prepared environmental reports summarizing sampling and other environmental evaluations at the Property.  That sampling and those reports regularly indicate the presence of hazardous substances and other constituents in the soil and groundwater on the Property, but the reports have never fully delineated the vertical or horizontal extent of the impacts.

27.     AMEC Environmental and Infrastructure, Inc. prepared a groundwater monitoring report for Corning on or about January 7, 2015 that provides, among other things, the following:

A.      A plume of TCE and other constituents exists in the groundwater at the Property.

B.      Groundwater at the Property is migrating roughly east.

C.      The highest impacted groundwater monitoring wells are located immediately downgradient of the Dry Well.

PPAB 2944592v3

28.     Mid-Atlantic Associates, Inc. prepared a soil and groundwater monitoring report for the Wake County Board of Education on September 3, 2015 that confirms, among other things, the following:

A.     A plume of TCE and other constituents exists in the groundwater on the Property.

B.     Groundwater at the Property is migrating roughly east.

C.     The highest impacted groundwater monitoring wells are located immediately downgradient of the Dry Well.

D.     At least one groundwater monitoring well upgradient of the Dry Well indicates elevated constituents, which is an indication that one or more sources of impacts other than the Dry Well exist at the Property.  On information and belief, these other source area(s) of constituents were caused by Corning's operations.

E.     The extent of the environmental impacts at, on and from the Property has not been fully delineated in approximately twenty-eight (28) years.

29.     On information and belief, AVX did not operate the Dry Well.

30.     On information and belief, TCE and other constituents detected at, on and from the Property originated from Corning operations prior the sale of the Property to AVX.

31.     Under the Purchase Agreement, the Letter Agreement and State and Federal laws, rules and regulations, Corning is liable for the environmental conditions at, on and from the Property and has had the obligation to assess and remediate those conditions since at least 1987.

32.     On information and belief, Corning has failed to pursue appropriate assessment and remedial efforts in at least the following respects:

PPAB 2944592v3

A.      Corning has unreasonably and knowingly delayed its pursuit of assessing the nature, extent and severity of the environmental impacts at, on and from the Property and remediating those impacts.

B.      Corning is utilizing inadequate remediation techniques for this Property at this time.

C.      Corning has failed to delineate fully the extent of environmental impacts at, on and from the Property.

D.      Corning has failed to exercise due care.

33.     AVX has been harmed by Corning's contamination of the Property and failure to assess and remediate the environmental impacts adequately.

34.     As a result of Corning's failure to assess and remediate adequately environmental impacts at, on and from the Property by, among other things, utilizing inadequate remediation techniques for this Property at this time, AVX has been unable to sell the Property.

35.     On or about March 26, 2015, AVX entered into an Agreement for Purchase and Sale of Real Property for the sale of the Property. The purchaser has been unwilling to close on the Property due to Corning's refusal to assess and remediate adequately environmental conditions at, on and from the Property at this time. On information and belief, the purchaser is a developer who negotiated with the Wake County Board of Education for the Board's purchase of the Property for a public high school. On information and belief, the Board recently decided not to pursue its purchase of the Property due to Corning's failure to assess and remediate adequately environmental conditions at, on and from the Property at this time.

36.     On or about September 17, 2015, Corning and the DEQ entered into an agreement in which Corning agreed to conduct assessment and remedial activity only in an 11-acre area of the Property under DEQ's Registered Environmental Consultant ("REC") program ("REC

8

Agreement"). The REC Agreement is entirely voluntary and can be dissolved at any time in Corning's discretion, regardless of whether Corning has assessed or remediated the Property. *See* REC Agreement ¶ F. Nothing in the REC Agreement prevents Corning from ceasing assessment and remedial activity in the Leased Area of the Property at any time. The REC Agreement is wholly inadequate to fulfill Corning's obligations regarding environmental conditions at the Property. Moreover, after approximately twenty-eight (28) years of inadequate response to environmental conditions on the Property, the REC Agreement gives Corning eight (8) additional years to address only the Leased Area.

37.     The REC Agreement also does not cover the other twenty-two (22) acres of the Property outside the Leased Area ("Non-Leased Area"). Sampling has indicated environmental impacts in the Non-Leased Area of the Property that, on information and belief, also are Corning's responsibility. Corning has refused to assess or remediate any part of the Non-Leased Area of the Property and has no agreement with DEQ to assess or remediate the Non-Leased Area. Because of Corning's refusal to assess or remediate any part of the Non-Leased Area, AVX has incurred and will incur costs and damages.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### (CERCLA § 107(a), 42 U.S.C. § 9607(a)(1))

38.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

39.     AVX and Defendants are "persons" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

40.     On information and belief, one or more of Defendants were the record title owners of the Property and operated at the Property, and therefore were the "owners" and "operators" of the Property as defined in Section 101(20)(A) of CERCLA, 42 U.S.C. §

9601(20)(A) and as those terms are understood in Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

41.     The Property is a "facility," as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

42.     TCE, tetrachloroethane and toluene, among other constituents detected in groundwater at the Property, are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

43.     There has been a "release" as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and/or "threatened release," as this term is used in CERCLA, of the above-named hazardous substances into the environment at, on and from the Property.  This release and/or threatened release of hazardous substances has caused and threatened to cause impacts to the environment including impacts to soil, surface water and groundwater.

44.     Corning is responsible for and has accepted responsibility for the release and disposal of the hazardous substances at, on and from the Property.

45.     The presence of the hazardous substances at, on and from the Property has proximately caused AVX to incur response costs, as defined in Sections 101(23), (24) & (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) & (25).

46.     Costs of response incurred by AVX are necessary response costs and are consistent with the National Contingency Plan within the meaning of Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

47.     AVX has satisfied any and all conditions precedent to the undertaking of such response actions, the incurrence of response costs, and to the recovery of those costs under Section 107 of CERCLA, 42 U.S.C. § 9607.

48. As a former "owner" of the Property, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are jointly and severally liable for all of AVX's response costs at the Property.

49. Under the circumstances presented in this complaint, Defendants are liable to AVX for all response costs that AVX has incurred and will continue to incur.

50. The presence of the hazardous substances at, on and from the Property has proximately caused AVX to incur the costs of investigation, "removal" and/or "remedial" action and "response" costs, as defined in Sections 101(23), (24) & (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) & (25).

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Breach of Contract)

51. AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

52. Under the Purchase Agreement, Corning is responsible for all Retained Liabilities, which include, among others: (i) "all liabilities for violations of environmental laws and health and safety laws applicable to such operation, which violations existed, or are based upon conditions that existed, prior to the Closing Date"; and (ii) "all other liabilities and obligations of or with respect to the Corning Electronics Business and the Corning Assets other than the AVX Assumed Liabilities." *See* Purchase Agreement ¶¶ 3.3(d) & (g). Environmental liability is not an AVX Assumed Liability under the Purchase Agreement; therefore, it is a Retained Liability. *See id.* ¶ 3.1.

53. Corning also agreed to indemnify and hold AVX, its directors, officers, employees and affiliates harmless from and against "any and all claims, liabilities, losses,

PPAB 2944592v3

damages, costs and expenses, including reasonable counsel fees" arising out of or relating to any Retained Liabilities.  *See* Purchase Agreement ¶ 12.1(b).

54.     The Letter Agreement was "intended to <u>confirm and amplify</u>" AVX's rights and Corning's obligations regarding environmental impacts at the Property and, in so amplifying AVX's rights under the Purchase Agreement, the Letter Agreement provides that:

> "All liabilities and obligations arising out of or relating to any Environmental Situation are Retained Liabilities within the meaning of [Purchase Agreement ¶ 3.3(d)], and therefore AVX, its directors, officers, employees, affiliates, successors and assigns (the "Indemnified Parties") shall be entitled to indemnification under [Purchase Agreement ¶ 12.1(b)]…."

*See* Letter Agreement ¶ 1.  The Letter Agreement also clarified that Corning agreed to "effect all remedial measures required by law or regulation."  *See* Letter Agreement ¶ 2.

55.     AVX performed its obligations under the Purchase Agreement and related documents but Corning knowingly and willfully failed to pursue assessment and remediation of the hazardous substances and other constituents it disposed of and released at, on and from the Property.

56.     As a result of Corning's failure to pursue assessment and remediation of the hazardous substances and other constituents it disposed of and released at the Property, those hazardous substances and other constituents remain at, on and from the Property, approximately twenty-eight (28) years later, resulting in a breach of the Purchase Agreement and Letter Agreement.

57.     As a direct and proximate result of Corning's breach of the Purchase Agreement and Letter Agreement, AVX has suffered, and continues to suffer, harm.  Therefore, AVX is entitled to damages resulting from Corning's breach of contract in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Declaratory Relief Under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2))

58.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

59.     Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), AVX seeks a declaration that:  (i) Corning is liable to AVX under CERCLA Section 107(a), 42 U.S.C. § 107(a); (ii) Corning is liable to AVX for 100% of AVX's past, current and future response costs related to releases and threatened releases at, on and from the Property; and (iii) the 100% allocation of liability to Corning is binding on all subsequent actions to recover further response costs or damages.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Declaratory Relief with Respect to the Defendants' Liability for Environmental Conditions at the Property and AVX's Response Costs under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202)

60.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

61.     An actual legal controversy within the meaning of 28 U.S.C. § 2201 has arisen and currently exists between AVX and Corning concerning their respective obligations and potential legal liabilities for environmental conditions at, on and from the Property and associated costs that have been incurred and will be incurred by AVX in connection with the investigation and cleanup of environmental impacts at, on and from the Property.

62.     Corning is liable to AVX for response costs, as set forth in the First Claim for Relief.

63.     AVX seeks a judicial declaration that Corning is: (i) liable for environmental conditions at, on or from the Property; and (ii) liable to AVX as alleged in the First Claim for Relief, and setting forth Corning's liability to AVX with respect to the costs incurred to date, and

13

those that will be incurred in responding to impacts at, on and from the Property in the future, including diminution in Property value.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Negligence)

64.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

65.     Corning owes AVX a duty of care concerning Corning's assessment and remediation of environmental conditions at, on and from the Property.

66.     Corning breached this duty in the following particulars:

A.     Corning has unreasonably and knowingly delayed its pursuit of assessing the nature, extent and severity of the impacts and remediating the impacts.

B.     Corning is utilizing inadequate remediation techniques for this Property at this time.

C.     Corning has failed to address or assess environmental impacts at, on and from the Property.

D.     Corning has failed to exercise due care.

67.     Corning knew or should have known that its breach of duty would harm and continue to harm AVX.

68.     As a direct and proximate cause of Corning's negligence and recklessness, AVX has been harmed, including, but not limited, to the following particulars;

A.     Diminution in property value.

B.     Lost profits from the sale and development of the Property.

C.     Related costs and expenses.

D.     Other and further damages that AVX will prove at trial.

14

69.     Corning's continuing breach of its duty was negligent, willful, wanton and in reckless disregard of AVX's rights.

70.     Therefore, AVX is entitled to actual damages resulting from Corning's conduct in an amount to be proven at trial.

71.     Corning's conduct in creating the negligence was knowing, willful, wanton, reckless, grossly negligent and in violation of Federal and State laws warranting the imposition of punitive damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Negligence *Per Se*)

72.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

73.     Federal and State laws, regulations and rules impose certain duties upon those persons who use, manage and handle potentially hazardous substances, such as TCE and other constituents.  Such laws include the Federal Water Pollution Control Act, CERCLA, the Federal Resource Conservation and Recovery Act, the North Carolina Solid Waste Management Act, the North Carolina Drinking Water Act and the North Carolina Water and Air Resources Act, and their respective accompanying regulations and rules.

74.     The essential purpose of these statutes, regulations and rules is to prevent the release, discharge and migration of hazardous substances, such as TCE and other constituents, into the environment for the purpose of protecting human health and property from the adverse effects of such hazardous substances and other constituents.

75.     AVX, as a then purchaser and now owner of the Property, is a member of the class of persons whom the Federal and State laws, regulations and rules are intended to protect.

15

PAB 2944592v3

76.     By releasing TCE and other constituents into the environment, and failing to take reasonably diligent actions to assess and remediate the impacts for nearly three decades, Corning has violated numerous provisions of the Federal and State laws, regulations and rules, and those violations are unexcused.  For example, on July 17, 1991, DEQ issued Corning an NOV for contravening the State's groundwater quality standards by improperly discharging contaminants into the subsurface via the Dry Well.

77.     Corning's release of TCE and other constituents into the environment and failure to take reasonably diligent actions to remediate the impacts has caused direct and proximate damage to AVX in the following particulars:

A.     Diminution in property value.

B.     Lost profits from the sale and development of the Property.

C.     Related costs and expenses.

D.     Other and further damages AVX will prove at trial.

78.     Corning knowingly, intentionally and willfully violated the above statutory and regulatory provisions and the rights of AVX that were intended to be protected by the Federal and State laws, regulations and rules.

79.     Therefore, Corning's violation of the Federal and State laws, regulations and rules is negligence *per se* and AVX is entitled to actual damages resulting therefrom in an amount to be proven at trial.

80.     Corning's conduct in creating the negligence *per se* was knowing, willful, wanton, reckless, grossly negligent and in violation of Federal and State laws warranting the imposition of punitive damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Nuisance)

81.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

82.     Corning's admitted releases of TCE and other constituents that remained on and continue to migrate today at, on and from the Property after AVX purchased the Property have materially, substantially and unreasonably interfered with AVX's use and enjoyment of the Property in that TCE and other constituents released by Corning and Corning's failure to assess and remediate adequately environmental impacts at, on and from the Property has prevented AVX from selling the Property.

83.     Corning's actions have proximately caused AVX to incur actual damages in an amount to be proven at trial.

84.     Corning's conduct in creating the nuisance was knowing, willful, wanton, reckless, grossly negligent and in violation of Federal and State laws warranting the imposition of punitive damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Trespass)

85.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

86.     Corning knowingly and intentionally disposed of and released hazardous substances and other constituents into the soil, surface water and groundwater at the Property during its ownership and operation of the Property, including, but not limited to, its release of hazardous substances and other constituents into the Dry Well.

87.     Those hazardous substances and other constituents that Corning disposed of and released on the Property during Corning's ownership remained on and continued to migrate at,

17

on and from the Property after AVX purchased the Property, and remain on and continue to migrate today without AVX's permission.

88.     During AVX's ownership of the Property, Corning knowingly and willfully failed to pursue adequate assessment and remediation of the hazardous substances and other constituents it disposed of and released at the Property over time.

89.     As a result of Corning's failure to pursue adequate assessment and remediation of the hazardous substances and other constituents it disposed of and released at the Property over time, those hazardous substances and other constituents remain at the Property, nearly thirty (30) years later, resulting in an intentional and unlawful entry onto the Property of which AVX is the owner, and which impacts are continuing in nature. Because AVX owns the Property and Corning's knowing and intentional disposal and release of hazardous substances and other constituents have caused an unlawful entry onto the Property of a continuing nature, a trespass has occurred.

90.     As a direct and proximate cause of Corning's trespass, AVX has been harmed, including, but not limited to, the following particulars;

    A.     Diminution in property value.

    B.     Lost profits from the sale and development of the Property.

    C.     Related costs and expenses.

    D.     Other and further damages as AVX will prove at trial.

91.     Therefore, AVX is entitled to actual damages resulting from Corning's trespass in an amount to be proven at trial.

92.     Corning's conduct in creating the trespass was knowing, willful, wanton, reckless, grossly negligent and in violation of Federal and State laws warranting the imposition of punitive damages in an amount to be proven at trial.

PPAB 2944592v3

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Injunction)

93.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

94.     Corning knowingly and intentionally disposed of and released hazardous substances and other constituents into the soil, surface water and groundwater at, on and from the Property during its ownership and operation of the Property, including its release of hazardous substances and other constituents into the Dry Well.

95.     Corning knowingly and willfully failed to pursue adequate assessment and remediation of the hazardous substances and other constituents it disposed of and released at, on and from the Property over time.

96.     As a result of Corning's failure to pursue assessment and remediation of the hazardous substances and other constituents it disposed of and released at the Property, those hazardous substances and other constituents remain at the Property, nearly thirty (30) years later.

97.     As of September of 2015, environmental sampling has confirmed, among others things, that:

A.     An undelineated plume of TCE and other constituents exists in the groundwater on the Property.

B.     Groundwater at the Property is migrating roughly east.

C.     The highest impacted groundwater monitoring wells are located immediately downgradient of the Dry Well.

D.     At least one groundwater monitoring well upgradient of the Dry Well indicates elevated constituents which is an indication that one or more source areas other than the Dry Well exist at the Property.

PPAB 2944592v3

98.     Corning has failed to pursue appropriate assessment and remedial efforts in at least the following respects:

A.     Corning has knowingly and unreasonably delayed its pursuit of adequately assessing the nature, extent and severity of the environmental impacts at, on or from the Property and adequately remediating those impacts.

B.     Corning is utilizing inadequate remediation techniques for this Property at this time.

C.     Corning failed to respond adequately to DEQ's 1991 NOV.

D.     Corning has failed to exercise due care.

99.     AVX has been harmed by Corning's contamination of the Property and failure to assess and remediate the impacts adequately.

100.     Because Corning has failed to assess and remediate adequately the environmental conditions at the Property for three decades and is under no binding obligation with DEQ to do so now, AVX has no adequate remedy at law.

101.     Therefore, AVX is entitled to an injunction requiring Corning to assess and remediate environmental impacts adequately at, on and from the Property in a timely fashion.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Declaratory Relief)

102.     AVX realleges and incorporates herein by reference the foregoing allegations as though fully set forth herein.

103.     AVX is entitled to obtain a declaration of the rights and obligations between AVX and Corning in this matter under N.C. Gen. Stat. § 1-253.

104.     An actual and justiciable controversy exists between the parties to this action as to their rights, duties and obligations as they exist in this matter.

PPAB 2944592v3

## PRAYER FOR RELIEF

WHEREFORE, AVX asks that the Court enter judgment for AVX and against Defendants as follows:

1.     For an order under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), that Defendants are each liable to AVX for response costs incurred and to be incurred by AVX in responding to the release or threatened release of any hazardous substances at, on and from the Property in an amount to be proven at trial;

2.     For a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendants are each liable to AVX under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs incurred and to be incurred by AVX in responding to the release or threatened release of any hazardous substances at, on and from the Property, which order will be binding on the Defendants in subsequent actions to recover further response costs or damages;

3.     For a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Defendants are each liable for environmental conditions at, on and from the Property and are liable to AVX for response costs incurred and to be incurred by AVX in responding to the release or threatened release of any hazardous substances at, on and from the Property;

4.     For the recovery of actual damages to the Property in an amount to be proven at trial;

5.     For the recovery of punitive damages against Defendants in an amount to be proven at trial;

6.     For a declaratory judgment under Chapter 1, Article 26 of the North Carolina General Statutes regarding the rights and obligations of the Parties;

7.     An injunction requiring Corning to assess and remediate adequately environmental impacts at, on and from the Property in a timely fashion;

21

8.      For AVX's costs of litigation, including reasonable attorneys' fees, as allowed by law and under the Purchase Agreement;

9.      For pre-judgment interest at the maximum rate allowable by law, from the time AVX incurred its response costs and/or damages relating to the Property;

10.      For such other and further relief in favor of AVX as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, AVX requests a jury trial on those issues triable by jury.

Respectfully submitted this 13th day of October, 2015.


 *s/ Steven D. Weber* _____
Steven D. Weber
N.C. State Bar #20189
Kevin A. Dunlap
N.C. State Bar #13479 (CM/ECF application pending)
*Attorneys for the Plaintiff*
*AVX Corporation*

OF COUNSEL:

PARKER POE ADAMS & BERNSTEIN LLP
Three Wells Fargo Center
401 South Tryon St., Ste. 3000
Charlotte, North Carolina
(704) 372-9000
steveweber@parkerpoe.com
kevindunlap@parkerpoe.com