IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-543-FL

| | | |
|---|---|---|
| AVX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CORNING INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for temporary restraining order ("TRO") and for preliminary injunction (DE 277).[1] The motion has been briefed fully and the issues raised are ripe for ruling. For the following reasons, plaintiff's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on October 15, 2015, asserting claims for costs and damages, as well as declaratory and injunctive relief, associated with alleged environmental contamination on its property at 3900 Electronics Drive in Raleigh, North Carolina (hereinafter, the "Property"), formerly owned by defendant between 1962 and 1987. Plaintiff purchased the Property in 1987 as part of a multi-party "Agreement of Purchase and Sale" (hereinafter "Purchase Agreement"), executed by defendant and several entities affiliated with defendant who are former-defendants in this matter (hereinafter, the "former secondary defendants").

---

[1] Also pending, but not yet ripe, is plaintiff's motion to strike/exclude the supplemental expert opinions of Daniel G. Sullivan and David L. Duncklee (DE 310), which will be addressed by separate order.

Plaintiff filed its operative complaint on October 13, 2017.[2] Defendant filed an answer and six counterclaims, on October 27, 2017, contending that plaintiff is responsible for additional environmental contamination on the Property. In orders on motions to dismiss and for summary judgment, entered August 28, 2018, and September 26, 2019, respectively, the court dismissed in part several claims asserted by plaintiff and counterclaims by defendant, as well as all claims against the former secondary defendants, with the following claims and counterclaims now remaining for trial:

1) Claims and counterclaims under CERCLA for cost recovery, contribution, and declaratory relief, under 42 U.S.C. §§ 9607(a)(1), 9613(f) and (g)(2), (claims I-II, and IV-V, counterclaims I-II, and IV-V), except for that part of the claims and counterclaims bearing on the issue of whether plaintiff used or released TCE at the Property, which issue the court decided in plaintiff's favor as a matter of law; and

2) Claims and counterclaims for breach of contract/indemnification and state law declaratory relief, (claims III and XI, counterclaims III and VI), except for that part of defendant Corning's breach of contract counterclaim claim and related counterclaim for declaratory relief premised upon violations attributable to plaintiff, which issue the court decided in plaintiff's favor as a matter of law.

(See Order (Sept. 26, 2019) at 3, 68; AVX Corp. v. Corning Inc., No. 5:15-CV-543-FL, 2019 WL 4727851, at *2-3, 35-36 (E.D.N.C. Sept. 26, 2019)).

On October 17, 2019, the parties filed a joint status report in furtherance of the court's trial planning and scheduling. That same date, plaintiff filed the instant motion, seeking a temporary restraining order and preliminary injunction "enjoining [defendant] from continuing to interfere

---

[2] Unless otherwise specified, all references to the "complaint" refer to the Third Amended Complaint filed October 13, 2017.

with and obstruct [plaintiff's] implementation of permanent storm water controls at [the Property], as requested by the North Carolina Department of Environmental Quality, and as required by [plaintiff's] City of Raleigh-issued land-disturbing and zoning permits." (Pl's Mot. (DE 277) at 1). In support of the motion, plaintiff relies upon the following: 1) declaration of John Waites, an environmental manager with plaintiff, with exhibits comprising a) City of Raleigh permits; b) plaintiff's grading plan; c) a March 15, 1993, lease, and March 9, 2018, letter renewal, between plaintiff and defendant (hereinafter the "Lease"); and d) City of Raleigh inspection reports; 2) correspondence between plaintiff and defendant regarding the Property; 3) correspondence between the parties and the North Carolina Department of Environmental Quality (NCDEQ); 4) excerpts of deposition of Daniel Shields; and 5) City of Raleigh storm water ordinance.

The court held a Rule 16 status conference on October 29, 2019, and reconvened a status conference and motion hearing on November 5, 2019. Upon joint status report filed by the parties, on November 18, 2019, the court entered a trial scheduling order setting trial to commence on August 3, 2020, the date of its current setting. The court held in abeyance briefing on the instant motion "pending efforts by the parties to resolve amicably issues raised therein," (Order (Nov. 18, 2019) at 1), which stay the court continued in text orders entered up through February 24, 2020. In the meantime, the parties engaged in a period of limited supplemental expert discovery, in accordance with the court's December 17, 2019, modification to the case management order.

Upon status report indicating impasse in resolution of the motion, the court directed briefing to resume on the instant motion on March 27, 2020. On April 24, 2020, defendant responded in opposition to the motion, relying upon a declaration of counsel with exhibits comprising: 1) an environmental evaluation of the Property prepared by Mid-Atlantic Associates, Inc., on September 3, 2015; 2) correspondence between the parties and their agents and

3

consultants; 3) transcript of deposition of Thomas Darby; 4) reports, surveys and permits related to the Property; and 5) correspondence between the parties and NCDEQ.

Plaintiff replied on May 8, 2020, relying upon additional correspondence between the parties.

**STATEMENT OF FACTS**

For background, the court incorporates herein by reference the statement of undisputed facts contained in the court's summary judgment order. (See Order (Sept. 26, 2019) at 7-18; AVX Corp., 2019 WL 4727851, at *4-11). The court summarizes below additional facts pertinent to the instant motion.

The Lease between the parties, first executed March 15, 1993, recites that defendant "received approval from the State of North Carolina of a corrective action plan relating to the remediation of certain environmental matters predating [defendant's] sale of the [Property] to AVX, and this corrective action plan requires the installation of certain groundwater wells and the construction of a groundwater treatment system and small central treatment building at the [Property] and [defendant's] access to the wells, the system and the building." (Lease (DE 278-2 at 20-21).[3]

For this purpose, the Lease provides that plaintiff lets to defendant and defendant takes from plaintiff the following premises (the "Leased Premises") at the Property: "the groundwater monitoring, observation and treatment wells and the underground recovery system junction boxes and conduits, the treatment facility and the right of ingress and egress in connection therewith, all as shown on Drawing No. 591574G1 of Law Environmental, Inc. Proposed Recovery System

---

[3] Page numbers in citations to record documents, including a corresponding docket entry "DE" number, reference the page number specified in the court's electronic case filing system and not the page number or party appendix page number showing on the face of the underlying document, if any.

4

Layout dated 02/01/92 as the same may be amended or modified from time to time." (Id. at 21). Attached to the lease as Exhibit A is the referenced drawing, an excerpt of which is copied below:



(Id. at 28).

According to plaintiff, in 2016, before it demolished the former manufacturing building on the Property and removed the building slabs, its consultant submitted to the City of Raleigh for approval a grading plan that included temporary and permanent storm water controls. (See Waite Decl. (DE 278-2) ¶¶ 4-5; id. Ex. B. (DE 278-2 at 14-18)). The City of Raleigh issued "Land

Disturbing" and "Zoning" permits to plaintiff on October 6, 2016, including provisions for "Storm Water Tracking." (Id. Ex. A (DE 278-2 at 7-12)). According to plaintiff, its grading plan requires "conveyance piping to convey storm water from the former building area to the on-site stream," thus traversing an area of the Property that is subject to the terms of the Lease. (Waite Decl. (DE 278-2) ¶¶ 7-8).

The parties corresponded numerous times between March 10, 2017, and this year, regarding plaintiff's proposals for placing stormwater conveyance piping over the area of the Property that is subject to the terms of the Lease. (See, e.g., DE 278-2 to DE 278-17; DE 309-40 to DE 309-56). On May 10, 2017, the City of Raleigh found the Property "not in compliance with the land disturbing permit, associated approved plans & specifications," with the direction to "restore drainage per the approved plan." (Waite Decl., Ex. D (DE 278-2 at 31)). On May 28, 2019, NCDEQ requested plaintiff "immediately regrade and/or backfill the area of the former building [on the Property] so that storm water drains away from the areas of known soil and groundwater contamination and no longer collects and ponds in this area." (DE 278-19 at 3). In addition, NCDEQ advised plaintiff "to conduct assessment and remediation, individually or jointly with [defendant], in the areas of its [Property] that are not currently being addressed by [defendant] under the [NCDEQ] Rec Program." (Id.).

In a September 17, 2019, letter to plaintiff, NCDEQ stated that "[c]onveying stormwater away from the former building area is currently of primary importance, and will benefit both [defendant] and [plaintiff's] interests at the site." (DE 279-6 at 2). NCDEQ further requested that plaintiff "provide information about any recent efforts by [plaintiff] to request [defendant's] cooperation on this matter, and to request detailed information from [defendant] about why they [sic] consider the proper conveyance of presumably uncontaminated stormwater via surface

6

drainage through their leased portion of the site to have any adverse impacts that would outweigh the universally understood negative impacts of allowing standing water to infiltrate contaminated areas." (Id. at 3).

Additional facts pertinent to the instant motion will be set forth in the analysis below.

## COURT'S DISCUSSION

A.  Standard of Review

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

B.  Analysis

A TRO and preliminary injunction are not warranted under the circumstances of this case for multiple reasons, which the court sets forth in turn below.

1.  Relief Sought

"The rationale behind a grant of a preliminary injunction has been explained as preserving the status quo so that a court can render a meaningful decision after a trial on the merits." Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 788 (4th Cir.1991) (quotations omitted). Accordingly, "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir.1994).

In addition, "[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint." Omega World

Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997). "Thus, a preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." Id. In other words, "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally, but conversely, preliminary relief may never be granted that addresses matters which in no circumstances can be dealt with in any final injunction that may be entered." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003) (internal citations omitted), abrogated on other grounds by eBay, Inc. v. MercExchange. LLC, 547 U.S. 388 (2006). A movant must demonstrate "a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." Id. at 526. "If that need is not presented, then a preliminary injunction should not be considered." Id. (emphasis added).

Here, the temporary injunctive relief sought by plaintiff is not warranted because plaintiff seeks a mandatory injunction without demonstrating extraordinary circumstances for such an injunction. Plaintiff asks the court to prohibit defendant from "continuing to interfere with and obstruct [plaintiff's] implementation of permanent storm water controls." (Pl's Mot. (DE 277) at 1). In this respect, plaintiff seeks to have the court do the opposite of preserving the status quo, and instead change what is allegedly "continuing" to take place to another action preferred by plaintiff. (Id.). Plaintiff has not demonstrated the requisite "most extraordinary" circumstances for such a mandatory injunction. Taylor, 34 F.3d at 270 n. 2. Indeed, plaintiff does not purport to describe extraordinary circumstances in its motion or briefs in support thereof.

Furthermore, plaintiff seeks relief that is not requested in the first instance in the complaint. The complaint does not seek a permanent injunction enjoining defendant from interfering with or

8

obstructing plaintiff's implementation of permanent storm water controls on its Property. It does not mention a need for implementation of permanent storm water controls on its Property, even though the operative complaint was filed well after the need for storm water controls allegedly arose, and after the March 2017 date on which defendant allegedly first failed to cooperate with implementation of conveyance piping across the portion of the Property at issue. (See Compl. (DE 105); Pl's Mem. (DE 278) at 1, 4-8). As such, the relief sought by the instant motion is not of the same character of the relief that maybe granted finally.

Plaintiff argues that the injunctive relief sought is procedurally proper because "it relates to both the operative complaint and to [defendant's] counterclaim alleging that the pooling of stormwater is exacerbating [defendant's] contamination at the property." (Pl's Reply (DE 313) at 6). As an initial matter, any reference to the counterclaim is insufficient to warrant the relief sought in the instant motion, because the counterclaim is brought by defendant, seeking relief on behalf of defendant. No matter how closely related defendant's counterclaim is to the stormwater issues raised by the plaintiff, (see, e.g., Answer and Counterclaims (DE 116) ¶ 34, 38, 62, 68, 70, 74 & pp. 56-57), it does not contain a permanent request for the relief that plaintiff seeks through the instant motion.

With respect to the complaint, plaintiff's argument that its request for relief "relates to" the complaint is insufficient to establish the necessary link between the permanent relief sought in the action and the temporary relief sought in the instant motion. Plaintiff points, for example, to the fact that the complaint "refers to" the Lease that "is the subject of this motion." (Pl's Reply (DE 313) at 8). Plaintiff also points to its allegations that defendant "knowingly delayed in addressing its contamination at the Property." (Id.). But, where the instant motion is premised upon a "breach of the Lease," (Pl's Mem. (DE 278) at 10), the complaint asserts no such claim of breach.

9

Moreover, the allegations in the complaint pertaining to the Lease and delays do not reference defendant's lack of cooperation with plaintiff's implementation of stormwater controls on the former building site on the Property. (See, e.g., Compl. (DE 105) at ¶¶ 68, 83, 106, 163, 174, 182, 197 and pp. 4-5, 59). In any event, while defendant's alleged conduct and interactions with plaintiff generally may be pertinent to resolution of issues remaining for trial, the mere relation between those issues and issues raised in the instant motion papers is insufficient to merit an award of the specific TRO and preliminary injunction sought here.

In sum, the relief sought in the instant motion is not warranted by the claims in the complaint. In so holding, the court is not expressing an opinion on whether and to what extent any or all of the conduct that is subject of the briefing on the instant motion may be pertinent for consideration in adjudicating the issues that remain for trial. It suffices merely for purposes of this motion that a TRO and preliminary injunction as requested now by plaintiff is not appropriate in light of the claims that are advanced in the complaint, in accordance with the law of the circuit regarding circumstances for the award of temporary injunctive relief. See Hazardous Waste Treatment Council, 945 F.2d at 788; Taylor, 34 F.3d at 270 n. 2; Omega World Travel, Inc., 111 F.3d at 16; In re Microsoft Corp. Antitrust Litig., 333 F.3d at 525.

2. Likelihood of Success

In addition, and in the alternative, plaintiff has not demonstrated a likelihood of success on the merits of its instant claim for injunctive relief. Plaintiff suggests that the relief sought is justified where defendant has "breach[ed] . . . the Lease," by refusing to give plaintiff "permission to install the piping on the leased Property," or "refused consent" for installation of the piping, or "refus[ed] to give plaintiff entry for this purpose." (Pl's Mem. (DE 278) at 5, 10). But, plaintiff does not advance any argument as to why the terms of the lease required defendant to give

permission or consent to plaintiff to install piping. The lease gives plaintiff unconditionally a "right to enter the Leased Premises upon reasonable notice to [defendant]." (Lease ¶8 (DE 278-2 at 23)). Moreover, plaintiff does not allege any instance in which it was denied entry after giving notice to defendant.

Indeed, plaintiff does not offer any argument as to the likelihood of its success on the merits. Rather plaintiff contends it has "raised fair grounds for the litigation," describing other claims it has asserted. (Pl's Mem. (DE 278) at 16). As an initial matter, this is not the standard for a TRO or preliminary injunction, which requires a clear showing of a likelihood of success on the merits. See Winter, 555 U.S. at 22 (stating a movant "must establish that he is likely to succeed on the merits" and "injunctive relief . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). In any event, whether plaintiff will succeed on other grounds advanced in this litigation is not pertinent to whether plaintiff could succeed on demonstrating a breach of the Lease by defendant, a claim not asserted in the complaint.

Thus, plaintiff has not demonstrated a likelihood of success on the merits necessary to obtain a TRO or preliminary injunction. Again, in so holding, the court expresses no view on the merits of plaintiff's claims remaining for trial, nor the import of the allegations asserted in its motion papers on the issues remaining.

       3.       Irreparable Injury

Furthermore, and in the alternative, plaintiff has not demonstrated that it is likely to suffer irreparable harm in the absence of the requested injunctive relief. Plaintiff suggests that it will be harmed by NCDEQ and City of Raleigh regulatory action if it does not install stormwater piping on its Property. (Pl's Mem. (DE 278) at 12). However, as an initial matter, nothing in the Lease prohibits plaintiff from installing storm water piping as needed on its Property, particularly where

the piping is related to the site of the former manufacturing plant. (See, e.g., Lease ¶¶ 8, 13 (DE 278-2 at 23, 25). While plaintiff has demonstrated that defendant likely would object to such installation above the portion of the Property subject of the Lease, and the manner of such installation could impact CERCLA contribution allocations, plaintiff has not demonstrated that it has been physically impeded from proceeding in accordance with its interests on its own Property.

That point aside, plaintiff has not demonstrated that any harm to it resulting from regulatory action by NCDEQ or the City of Raleigh could not be remedied, if due to defendant's conduct, through monetary relief. See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 218 (4th Cir. 2019) ("[W]hen anticipated economic losses will be recoverable at the end of litigation, then those losses generally will not qualify as irreparable for purposes of preliminary relief.").

Furthermore, the record reflects that the parties have made progress in negotiating terms and conditions for laying conveyance piping on the portion of the Property subject to the Lease. (See, e.g., Reply (DE 313) at 1 ("Corning has finally engaged with AVX, [and] some progress has been made.")). With the progress already made, and with trial scheduled only a few months out, plaintiff has not demonstrated a likelihood of irreparable harm in the form of regulatory action, where the parties now are proceeding towards a cooperative resolution, as NCDEQ requested, and where NCDEQ itself questioned defendant's rationale for objecting to conveyance piping over the portion of the Property subject to the Lease. (See DE 279-6 at 2-3).

While plaintiff suggests in reply that progress made so far is partial only, and that items remain before the stormwater conveyance project is completed, (see, e.g., Reply (DE 313) at 1), this does not advance its position concerning likelihood of irreparable harm. Indeed, it is uncertain at this point if entry of the injunction exactly as plaintiff requested would serve any purpose, where,

as plaintiff admits in its reply, "Corning has finally engaged with AVX." (Id.). While the court in theory could more narrowly tailor an injunction to meet the most recent circumstances, plaintiff has not suggested the terms of such a modified injunction, nor proposed injunction language with specific terms. See Fed. R. Civ. P. 65(d)(1) (stating that "[e]very order granting an injunction and every restraining order must . . . state its terms specifically and . . . describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."). In sum, plaintiff fails to demonstrate a likelihood of irreparable harm if the requested injunction is not entered. Given the aforementioned shortcomings, the court need not reach defendant's additional arguments in opposition to the instant motion.

## CONCLUSION

Based on the foregoing, plaintiff's motion for temporary restraining order and for preliminary injunction (DE 277) is DENIED.

SO ORDERED, this the 18th day of May, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge